NOT FOR PUBLICATION                              [Docket No. 19]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

ULIMA A. MCLAUGHLIN,                :
individually and as Guardian       :
ad Litem for her children,         :
TERRY A. MCLAUGHLIN, JR., and      :   Civil No. 06-4494 (RMB)
RASHAN M. LUCAS,                    :
                                    :
              Plaintiff,            :   **OPINION**
                                    :
         v.                         :
                                    :
COUNTY OF GLOUCESTER,               :
GLOUCESTER COUNTY SHERIFF'S         :
DEPARTMENT, JOHN DOES 1-5           :
(fictitious name) individually     :
and in their official              :
capacity,                          :
                                    :
              Defendants.           :

APPEARANCES:

George J. Botcheos, Jr., Esq.
George J. Botcheos, Chartered
436 Commerce Lane, Suite A
West Berlin, NJ 08091
     Attorney for Plaintiff

Patrick J. Madden, Esq.
Madden & Madden, PA
108 Kings Highway East, Suite 200
P.O. Box 210
Haddonfield, NJ 08033
     Attorney for Defendants County of Gloucester and Gloucester
     County Sheriff's Department

**BUMB**, United States District Judge:

**INTRODUCTION**

This matter comes before the Court upon a motion for summary judgment by the County of Gloucester (the "County") and the Gloucester County Sheriff's Department (the "Sheriff's Department"). Plaintiff brought a 42 U.S.C. § 1983 action against the County, the Sheriff's Department, and various unidentified arresting officers ("John Does 1-5"), individually and in their official capacities, claiming that they violated her Fourth Amendment rights by conducting a warrantless search of her home. Both the County and the Sheriff's Department now move for summary judgment. For the reasons set forth below, summary judgment will be granted in favor of both Defendants.

**FACTS[1]**

On August 30, 2004, police officers "John Does 1-5," who have since been identified, went to Plaintiff's home looking for Terry McLaughlin, Sr. ("McLaughlin"), Plaintiff's husband. McLaughlin had previously lived at the residence and frequently returned there to see his son, sometimes spending one or more nights at the residence. (Parties' SOF at ¶¶ 12-15). The police officers had three warrants to arrest McLaughlin due to unpaid child support obligations. (Id. at ¶ 22). The arrest warrants

_____

[1] The facts recited here are based on the parties' Statements of Facts ("SOF").

2

listed Plaintiff's address as an alternate address for McLaughlin.  (<u>Id.</u> at ¶ 23).

Six months earlier, officers from the same division as John Does 1-5 had arrested McLaughlin on a similar warrant at Plaintiff's residence.  (<u>Id.</u> at ¶ 16).  During that earlier incident, Plaintiff's daughter had told the police that McLaughlin was not at the residence while, in fact, McLaughlin was attempting to flee through a rear window of the house.  An officer waiting behind the home apprehended him.  (<u>Id.</u> at ¶¶ 18-19).

When the officers arrived at Plaintiff's residence on August 30, 2004, Plaintiff's sons, Rashan Lucas ("Lucas"), age fifteen, and Terry McLaughlin, Jr. ("Jr."), age four, were home alone.  (<u>Id.</u> at ¶ 24).  Lucas answered the door and the officers told him they were looking for McLaughlin.  (<u>Id.</u> at ¶ 27).  Lucas testified that the officers asked to come in to search the residence.  (<u>Id.</u> at 29).  However, Lucas told the officers that McLaughlin was not at the residence and asked to see a search warrant.  (<u>Id.</u> at ¶¶ 28-29).  The officers told him they did not have one and Lucas refused to let them inside.  (<u>Id.</u> at ¶ 33).

Defendants assert that the officers then questioned various neighbors, who said they had seen a man at Plaintiff's residence.  (Def. SOF at ¶¶ 34-36).  Plaintiff, however, denies this, arguing that the officers cannot remember the names or addresses of the

neighbors they spoke with or the specifics of the questions they asked. (Pl. SOF at ¶¶ 34-36). Although critical of the officers' memories, Plaintiff has not produced the testimony of any of the neighbors to demonstrate that they, in fact, were not questioned by the officers.

The officers then returned to the residence and spoke with Lucas again. (Parties' SOF at ¶ 37). Plaintiff alleges that when the officers returned, "Lucas permitted the officers to enter the home after they flashed a warrant in front of his face and led him to believe that it was a search warrant." (Pl. SOF at ¶ 38). The parties agree that the document was an arrest warrant for McLaughlin, not a search warrant.

The officers searched the residence for approximately 10-15 minutes. (Parties' SOF at ¶ 47). They did not destroy anything in the home or leave it in "disarray." (Id. at ¶ 46). After finding that McLaughlin was not in the home, the officers questioned Lucas, asking him where McLaughlin could be and whether Lucas was lying out of fear. (Id. at ¶¶ 49-50). Lucas testified that the officers "kept on telling me if I am lying to them they can take me to juvi." (Id. at ¶ 49).

Plaintiff claims that, as a result of the incident, she "was very nervous and afraid in [her] own home." (Id. at ¶ 54). Similarly, Lucas testified that the incident "scared me, it made me feel unsafe, like in my own home it made me feel like people

4

could just come in and do what they wanted." (<u>Id.</u> at ¶ 55).
Neither Plaintiff nor Lucas sought medical or psychological
treatment. (<u>Id.</u> at ¶ 56).


**STANDARD OF REVIEW**

Summary judgment shall be granted if there is no genuine
issue as to any material fact and the moving party is entitled to
a judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Hersh v.</u>
<u>Allen Products Co.</u>, 789 F.2d 230, 232 (3d Cir. 1986). A dispute
is "genuine" if "the evidence is such that a reasonable jury
could return a verdict for the non-moving party." <u>Anderson v.</u>
<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is
"material" only if it might affect the outcome of the suit under
the applicable rule of law. <u>Id.</u> Disputes over irrelevant or
unnecessary facts will not preclude a grant of summary judgment.
<u>Id.</u> "In making this determination, a court must make all
reasonable inferences in favor of the non-movant." <u>Oscar Mayer</u>
<u>Corp. v. Mincing Trading Corp.</u>, 744 F. Supp. 79, 81 (D.N.J. 1990)
(citing <u>Meyer v. Riegel Prods. Corp.</u>, 720 F.2d 303, 307 n.2 (3d
Cir. 1983)). "At the summary judgment stage the judge's function
is not ... to weigh the evidence and determine the truth of the
matter but to determine whether there is a genuine issue for
trial." <u>Anderson</u>, 477 U.S. at 249.

**LEGAL ANALYSIS**

Plaintiff brings this claim against Defendants pursuant to Section 1983, which provides,

> Every person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

42 U.S.C. § 1983.

**A)   Claim against the Sheriff's Department**

The law is well-settled that a section 1983 claim may be brought only against a "person." See, e.g., Will v. Michigan Dept. Of State Police, 491 U.S. 58 (1989); Monell v. New York City Department of Social Services, 436 U.S. 658 (1978). Although municipalities and other local governments units are deemed "persons" subject to liability under § 1983, Monell, 436 U.S. at 690, sheriff's departments cannot be sued in conjunction with a county because they are merely arms of the county, not separate entities.[2] Open Inns, Ltd. v. Chester County Sheriff Dept., 24 F. Supp. 2d 410, 417 (E.D. Pa. 1998) (dismissing claim against sheriff's department because it is only a sub-unit of the county); see also Bosenberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir. 1997) (for purposes of § 1983 claims, municipalities and police departments are treated as single entity); N.J.S.A.

_____

[2] The Court notes that neither party has addressed this issue.

6

40A:14-118 (recognizing that police departments are created as executive and enforcement branches of government, whether as divisions, departments or agencies of municipalities).  In this case, because Plaintiff has named the County as a Defendant in this action, the Sheriff's Department, a branch of the County, cannot be sued as an individual entity.  Accordingly, Plaintiff's claim against the Sheriff's Department is dismissed.

**B)  Claim against the County**

Local government units, such as the County, are not liable under § 1983 solely on a theory of <u>respondeat superior</u>.  <u>See</u> <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 824 n.8 (1985); <u>Monell</u>, 436 U.S. at 690-91, 694.  However, a section 1983 action may be brought against a local government when the local government is shown to be the "moving force" behind the constitutional violation.  <u>Monell</u>, 436 U.S. at 690 n.55; <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) ("governmental entity is liable under § 1983 only when the entity itself is a "moving force" behind the deprivation").  In <u>Monell</u>, the Supreme Court created two means of establishing local governmental liability under section 1983: policy and custom.  As set forth by the Third Circuit,

> [a] government policy or custom can be established in two ways.  Policy is made when a "decision maker possessing final authority to establish municipal policy with respect to the action" issues an official proclamation, policy or edict.  A course of conduct is considered to be a "custom when, though not authorized by law, such practices of state officials [are] so permanent and well settled" as to virtually constitute law.

7

Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990)
(internal citations omitted).

Custom may be established by evidence of knowledge and
acquiescence on the part of policymakers.  See Fletcher v.
O'Donnell, 867 F.2d 791, 793 (3d Cir. 1989).  A plaintiff must
show that the policymaking officials knew, or should have known,
about the illegal practices and, therefore, tacitly authorized a
custom of tolerating their officers' supposedly illegal
activities.  See Beck v. City of Pittsburgh, 89 F.3d 966, 973 (3d
Cir 1996) (discussing tacit authorization of excessive force).
Custom may also be established by evidence of inadequate police
training procedures, but "only where the failure to train amounts
to deliberate indifference to the rights of persons with whom the
police come into contact."  City of Canton v. Harris, 489 U.S.
378, 388 (1989).  Moreover, unless the policy or custom at issue
is, itself, unconstitutional, courts have generally held that
"more proof than [a] single incident will be necessary ... to
establish both the requisite fault on the part of the
municipality and the causal connection between the 'policy' and
the constitutional deprivation."  City of Oklahoma City, 471 U.S.
at 824.

Thus, in order to establish liability against the County,
Plaintiff must identify the illegal conduct properly attributable
to the County and show that the County was the "moving force"
behind the alleged injury.  This means that the Plaintiff "must

8

show that the action was taken with the requisite degree of culpability and [] demonstrate a direct causal link between the [County] action and the deprivation of federal rights." <u>Bd. of the County Comm'rs of Bryan County v. Brown</u>, 520 U.S. 397, 404 (1997).

**1) Constitutional Violation**

The first question is whether Plaintiff has established a constitutional violation.  Here, Plaintiff argues that the officers' search of her home without a search warrant violated her rights to be free from the illegal searches pursuant to the Fourth Amendment.  However, as the Supreme Court has held, "for Fourth Amendment purposes, an <u>arrest</u> warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." <u>Payton v. New York</u>, 445 U.S. 573, 602 (1980) (emphasis added).  Thus, a search warrant was not required in this case as long as the officers had a reasonable belief (even if it was not correct) that McLaughlin resided at Plaintiff's residence and was there at the time of the attempted arrest.  <u>See</u> <u>Valdez v. McPheters</u>, 172 F. 3d 1220 (10th Cir. 1999) ("requiring actual knowledge of the suspect's true residence would effectively make <u>Payton</u> a dead letter," as police "could never be certain that the suspect had not moved out the previous day").

Plaintiff contends that the officers lacked enough

9

information to form a reasonable belief that McLaughlin resided at Plaintiff's residence.  This Court disagrees.  To begin, there is no dispute between the parties that the arrest warrant listed Plaintiff's address as an alternate address for McLaughlin.  In addition, the County has introduced evidence that the officers questioned some of Plaintiff's neighbors, who informed them that a man lived in the home and was usually there during the day.  Although Plaintiff is critical of the officers' inability to remember the names of the neighbors, she presents no evidence to contradict the officers' testimony.  Nor does Plaintiff deny that the officers first appeared and spoke with her son and then later returned, a fact that corroborates the officers' testimony that they left the premises to question the neighbors.  Moreover, the officers had been at Plaintiff's residence six months earlier when they arrested McLaughlin after he attempted to flee out a rear window of the house.

Despite the information the officers had, Plaintiff argues that the officers should have done more to establish that McLaughlin resided at her home.  For example, Plaintiff contends that the officers should have gone to the other address listed on the warrant or to McLaughlin's place of employment.  The law, however, does not impose such a requirement.

Based on the record before it, this Court finds that the officers had a reasonable belief that McLaughlin resided at Plaintiff's home and was there at the time of the attempted

arrest.  Accordingly, Plaintiff has failed to satisfy the first element of a section 1983 claim.


**2) Moving Force**

Even assuming, <u>arguendo</u>, that the officers violated Plaintiff's constitutional rights by illegally entering her home, Plaintiff's claim against the County also fails because she has not offered sufficient evidence that the County was the "moving force" behind the officers' actions.  Plaintiff does not allege that the conduct resulted from an official policy of the County. Instead, she rests her case on a theory of custom – either that the lack of a policy resulted in a custom that insufficiently protects individuals' rights, or that the County failed to adequately train the officers to protect individual rights. To make a claim based on custom, Plaintiff must show that the policymaking officials knew, or should have known, about the illegal practices and, therefore, tacitly authorized a custom of tolerating their officers' supposedly illegal activities. Plaintiff has presented no evidence to show that policymakers actually knew of the officers' supposed violations; rather, she bases her argument on the notion that policymakers should have known.

First, Plaintiff presents the testimony of Det. Gentile, who stated, "[w]e never got a search warrant for anything." (Gentile Dep. at 34:16-17).  Of course, as set forth above, a search

warrant is not always needed.  Nonetheless, Det. Gentile
explained his answer, an explanation Plaintiff appears to ignore.
He did not testify that the officers would enter a home without
an arrest warrant, but rather that officers would choose not to
go in the home and simply move on to the next place.  As he
explained, officers face significant time constraints, so that
rather than getting a search warrant, "if [the subject of the
warrant] is not there, we go to the next place.  It's a numbers
game."  (Pl. Opp. at 8 (citing Gentile Dep. at 34:5-20)).  This
interpretation of Det. Gentile's testimony comports with Det.
Villanova's testimony that, when Lucas asked to see a warrant,[3]
"I would go show him the warrant, if he still said no, then we
would have been done."  (Villanova Dep. (Def. Br., Ex. B) at
27:4-9).

Plaintiff also cites testimony from Det. Villanova, who
stated that "it's not my business to believe if [McLaughlin] is a
permanent resident, as far as I am concerned."  (Villanova Dep.
27:23-28:3; Pl. Opp. at 8).  Contrary to Plaintiff's expansive
arguments regarding what law enforcement should be required to do
to effect an arrest, police officers are not census takers.
Indeed, a person whose arrest is sought might well have more than
one residence.  See, e.g., Case v. Kitsap County Sheriff's

---

[3] The parties dispute whether Lucas asked to see a "warrant"
or a "search warrant."  Det. Villanova testified based on
the assumption that Lucas wanted to see an arrest warrant,
not a search warrant.

12

<u>Department</u>, 249 F. 3d 921 (9th Cir. 2001) (officer reasonably concluded that arrestee lived there "at least part of the time" and was far more than an "overnight guest").  Moreover, Det. Villanova explained that, in this case, he knew McLaughlin had been apprehended at the residence prior to this incident and that others had told him that McLaughlin "was living there." (Villanova Dep. 27:23-28:3).

Finally, Plaintiff argues that, "the sheriff's department has no written policy or procedure, or any other type of training to instruct officers how to lawfully execute arrest warrants." (Pl. Opp. at 8).  Because of this, Plaintiff argues, "the methods employed by the sheriff's officers have been adopted and accepted by the sheriff's department and represent the custom and practice of the sheriff's department for executing arrest warrants." (<u>Id.</u>).  Yet, as demonstrated above, there was nothing improper about the procedures followed in executing the arrest warrant.

In sum, Plaintiff's evidence is woefully deficient in demonstrating a County custom or policy of allowing illegal conduct that results in constitutional violations.  Plaintiff's failure to train claim is similarly deficient.  Accordingly, the County is entitled to summary judgment.[4]

---

[4] The only remaining claim, then, is the claim against the "John Doe" Defendants.  Plaintiff, however, failed to amend the Complaint to identify the "John Does" who searched Plaintiff's residence and to state claims against those particular officers. Of course, even if she had timely amended, such claims against the officers in their official capacities would fail, as the Eleventh Amendment bars suits for money damages against state

**CONCLUSION**

    For the aforementioned reasons, this Court holds that the defendants are entitled to summary judgment.  An appropriate Order will issue this date.


Dated:   <u>March 12, 2008</u>     <u>s/Renée Marie Bumb</u>
                                       RENÉE MARIE BUMB
                                       UNITED STATES DISTRICT JUDGE

---

officials in their official capacity.  U.S. Const. amend. XI; <u>see also</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 (1985).  Additionally, such claims against the officers in their individual capacities would be subject to a qualified immunity analysis, which this Court need not reach.